UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

\- v. - :

ROMANA LEYVA and
ARIFUL HAQUE, :

Defendants. :

\- - - - - - - - - - - - - - - - - - x

**SEALED SUPERSEDING INDICTMENT**

S1 19 Cr. 667 ( )

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

**OVERVIEW OF THE SCHEME**

1. From at least in or around March 2015 up to and including in or around December 2018, ROMANA LEYVA and ARIFUL HAQUE, the defendants, and others known and unknown, were members of a criminal fraud ring (the "Fraud Ring") based in the United States and India that committed a technical support fraud scheme targeting elderly victims located across the United States and Canada, including in the Southern District of New York. The primary objective of the Fraud Ring's technical support fraud scheme was to trick and deceive victims into believing that their computers were infected with malware, and then convince them to pay hundreds or thousands of dollars to the Fraud Ring for phony computer repair services. Over the

course of the conspiracy, the Fraud Ring generated more than $10 million in proceeds from at least approximately 7,500 victims.

**MEANS AND METHODS OF THE CONSPIRACY**

2. The scheme generally worked as follows. First, the Fraud Ring caused pop-up windows to appear on victims' computers. The pop-up windows claimed, falsely, that a virus had infected the victim's computer. The pop-up window directed the victim to call a particular telephone number to obtain technical support. In at least some instances, the pop-up window threatened victims that, if they restarted or shut down their computer, it could "cause serious damage to the system," including "complete data loss." In an attempt to give the false appearance of legitimacy, in some instances the pop-up window included, without authorization, the corporate logo of a well-known, legitimate technology company. In fact, no virus had infected victims' computers, no harm would have resulted from shutting down or restarting the computer, and the technical support numbers were not associated with the legitimate technology company. Rather, these representations were false and were designed to trick victims into paying the Fraud Ring to "fix" a problem that did not exist.

3. Indeed, a victim who called the purported technical support phone number reached a call center associated with the Fraud Ring. Conspirators at the call center requested

permission to obtain remote access to victim computers. Once granted access, the member of the Fraud Ring connected remotely to the victim's computer, made diagnostic tools appear on the victim's computer screen, and falsely repeated that the computer was infected with a virus, and informed the victim that he or she could fix the purported problem in exchange for a fee. The fee varied depending on the purported "service" selected (*e.g.*, one-time, one year, lifetime support, etc.) and typically ranged between several hundred dollars, and several thousand dollars. If a victim agreed verbally to one of these arrangements, the member of the Fraud Ring would download and run a freely available anti-virus tool, and then leave a text file on the desktop of the victim's computer with specific payment instructions.

4. In some cases, certain victims were re-victimized in connection with a purported "refund" of their original payment to the Fraud Ring. For example, a victim was initially defrauded out of several hundred dollars due to the technical support fraud explained above; that victim had paid the Fraud Ring to remove the purported virus from their computer and to receive "lifetime" technical support. Later, the Fraud Ring contacted that victim to say that the technical support company that had promised lifetime support was going out of business and wanted to refund the victim, as the company could no longer

provide lifetime support. Through the "refund" process, the Fraud Ring gained access to the victim's bank account; claimed to have paid out too large of a refund, due to a typographical error (*e.g.*, a refund of $4,500 instead of the intended refund amount of $450); and instructed the victim to "reimburse" the Fraud Ring thousands of dollars, through gift cards.

5. Over the course of the conspiracy, the Fraud Ring generated more than $10 million in proceeds from victims through various means of payment, including but not limited to credit cards, personal checks, postal money orders, and gift cards. Over the course of the conspiracy, the Fraud Ring generally transitioned from receiving payments via credit card and personal check -- both of which could be reversed, for a time, after a victim's payment -- to receiving payments via postal money orders and gift cards, which could not later be reversed or clawed back.

6. At all times relevant to this Indictment, ROMANA LEYVA, the defendant, was a Nevada-based member of the Fraud Ring. Among other things, LEYVA created several fraudulent corporate entities that were used to receive fraud proceeds from victims, recruited others (including through misrepresentations) to register fraudulent corporate entities that became part of and facilitated the activities of the Fraud Ring, and assisted others in setting up fraudulent corporate entities and bank

accounts, including coaching them to make misrepresentations to bank employees where necessary.

7. At all times relevant to this Indictment, ARIFUL HAQUE, the defendant, was a New York-based member of the fraud ring. HAQUE registered a fraudulent corporate entity that was used to receive fraud proceeds from victims on behalf of the Fraud Ring. HAQUE also provided guidance to a co-conspirator who registered a different fraudulent corporate entity that was part of the Fraud Ring, and deposited fraud proceeds into accounts associated with that entity.

**STATUTORY ALLEGATIONS**

8. From at least in or around March 2015 up to and including in or around December 2018, in the Southern District of New York and elsewhere, ROMANA LEYVA and ARIFUL HAQUE, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

9. It was a part and an object of the conspiracy that ROMANA LEYVA and ARIFUL HAQUE, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly would and

did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, LEYVA and HAQUE engaged in a technical support fraud scheme to deceive victims that their computers were infected with malware, to induce them to pay for computer repair services that they did not need and make other unnecessary payments, and sent and received interstate and foreign text messages and phone calls in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Wire Fraud)**

The Grand Jury further charges:

10. The allegations contained in paragraphs 1 through 9 of this Indictment are repeated and realleged as if fully set forth herein.

11. From at least in or around March 2015 up to and including in or around December 2018, in the Southern District of New York and elsewhere, ROMANA LEYVA and ARIFUL HAQUE, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent

pretenses, representations, and promises, knowingly did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, and aided and abetted the same, to wit, LEYVA and HAQUE engaged in a technical support fraud scheme to deceive victims that their computers were infected with malware, to induce them to pay for computer repair services that they did not need and make other unnecessary payments, and sent and received, and caused others to send and receive, interstate and foreign text messages and phone calls, to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

**FORFEITURE ALLEGATION**

12. As the result of committing the offenses charged in Counts One and Two of this Indictment, ROMANA LEYVA and ARIFUL HAQUE, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency

representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Assets Provision**

13. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461, to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ROMANA LEYVA and
ARIFUL HAQUE,

Defendants.

**SUPERSEDING INDICTMENT**

S1 19 Cr. ( )

(18 U.S.C. §§ 1349, 1343, & 2.)

GEOFFREY S. BERMAN
United States Attorney

[signature]
Foreperson

9/16/19
Superseding Indictment Filed
True Bill
Arrest Warrant Issud
[signature]