JAGELEYC
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 19 Cr. 00667

ROMANA LEYVA and ARIFUL HAQUE,

Defendants.

Conference
------------------------------x

New York, N.Y.
October 16, 2019
11:30 A.M.

Before:

HON. PAUL A. CROTTY,

District Judge

APPEARANCES

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BY: MICHAEL NEFF
RENA BOLIN
JUSTIN GETZ

Assistant United States Attorneys

LAW OFFICE OF DAVID K. BERTAN, ESQ.
Attorney for Defendant Leyva
BY: DAVID K. BERTAN

BRILL LEGAL GROUP
Attorney for Defendant Haque
BY: PETER E. BRILL

Also Present:
RENA BOLIN, Pretrial Services
JUSTIN GETZ, USPO

(Case called)

THE COURT: Good morning. Please be seated.

DEPUTY CLERK: For the government, state your appearance.

MR. NEFF: Michael Neff for the government, and beside me at counsel table I am joined by special agent Justin Getz from the Department of Homeland Security, and with US Pretrial Offices Services, Rena Bolin.

THE COURT: Good morning.

Ms. Leyva, how are you?

DEFENDANT LEYVA: All right.

DEPUTY CLERK: Appearance for the defendants.

MR. BERTAN: David Bertan for Romana Leyva, who is seated to my left.

MR. BRILL: Peter Brill for Mr. Haque.

THE COURT: Mr. Brill and Mr. Haque, how are you?

DEFENDANT HAQUE: Fine.

THE COURT: When what do you propose to do today, Mr. Neff?

MR. NEFF: A few things. I believe the first item of business may be to formally appoint Mr. Bertan as Ms. Leyva's counsel.

By way of background, she was arrested in Las Vegas, which is where she lives. She appeared in court there, waived an identity hearing, and had counsel out there but does not yet

formally have counsel in this district.

I believe she may need to be arraigned formally.

Mr. Haque was already arraigned in this district about a month ago, the day of his arrest.

Then I suppose we will be setting a schedule and discussing bail conditions for Ms. Leyva, and I believe the parties are in agreement about those conditions.

THE COURT: Are the conditions the same as the conditions in Nevada?

MR. NEFF: They are, I believe, with only two small changes.

THE COURT: Mr. Bertan?

MR. BERTAN: That's correct, Your Honor.

THE COURT: Your CJA also?

MR. BERTAN: That's correct.

THE COURT: Are you prepared to accept this representation?

MR. BERTAN: Yes. I have my client's financial affidavit for the Court .

THE COURT: OK. I'm signing this financial affidavit, having approved it, and appointing Mr. Bertan counsel for Ms. Leyva.

MR. BERTAN: Thank you, Your Honor.

THE COURT: OK. Do you want to proceed with the arraignment?

MR. NEFF: If that's acceptable to the Court, yes, your Honor.

THE COURT: All right.

Ms. Leyva, have you seen a copy of the indictment ?

MR. BRILL: Yes.

THE COURT: Have you had a chance to consult with Mr. Bertan about it?

DEFENDANT LEYVA: Yes.

THE COURT: Do you want me to read you the indictment or do you waive the reading of the indictment?

DEFENDANT LEYVA: No, not read.

THE COURT: Do you want to enter your plea now?

DEFENDANT LEYVA: Not guilty.

THE COURT: A plea of not guilty will be entered.

What do you have by way of discovery, and what you are producing, Mr. Neff?

MR. NEFF: The discovery is substantial. It's approximately between two and a half and three terabytes. It has not yet been produced.

I informed counsel yesterday that we would need a large drive, but it is ready to be produced once we receive that drive from defense counsel.

We also handed up to your Honor's deputy just before this conference a signed proposed protective order, which is appropriate for a couple reasons, including protection of

victims' identities, which the discovery will contain.

In terms of categories, there are two broad categories within the discovery: Documentary evidence and electronic evidence. The documents will include hundreds of written victim complaints, bank records for more than 50 bank accounts, search warrants that were part of this investigation, and a number of subpoena returns.

The electronic evidence will include, among other things, forensic images of six victims' computers, forensic images of two computers, which were imaged with the consent of a participant in the scheme, screen shots of communications between Defendant Leyva and another participant in the scheme, along with more than a hundred thousand lines of WhatsApp chats obtained through a search warrant.

I should note we've got the contents of 13 domains stored on virtual servers, and that includes email website content and logs. These are domains used by, or suspected to be used by, the fraud ring in this case.

There will be screen shots of websites that were used by the entities in this case to collect payments from victims that they had defrauded.

A number of the websites, but not all of them, are visually identical except for the name of the entity at issue.

In that connection, I did produce just a couple pages of what I'll call "introductory discovery" to both attorneys

just before this conference.

That is a general overview. I should also note that our investigation is ongoing, so even once we've produced what we currently have, we will promptly produce additional materials as we come into possession of them.

MR. BRILL: I missed when you are going to produce these materials that you have.

MR. NEFF: Promptly upon receipt of our drive from the defense.

THE COURT: OK. And do you anticipate when that's going to be?

MR. BRILL: I ordered mine. It should arrive tomorrow. I just have to deliver it to the government.

THE COURT: Thank you, Mr. Brill.

MR. BERTAN: I'll order one this evening and send it directly to the government. They should have it in a day or so.

THE COURT: We're talking about the initial round of production being complete probably by Friday of this week if you get the hard drives?

MR. NEFF: Your Honor, I'm not certain that it can be done by Friday because of the copying process and the volume, but it certainly will be done promptly upon receipt consistent with -- and I'm mindful that in certain other cases we have run into minor technological hurdles, especially given size, and

sometimes the need to copy things overnight, but it will be done promptly upon receipt.

THE COURT: OK. Mr. Brill, do you, or do you, Mr. Bertan, have anything to say?

MR. BRILL: Not at this time, your Honor.

MR. BERTAN: No.

THE COURT: So we will pick a date for the next conference.

MR. BRILL: Please.

THE COURT: Well, you've heard what Mr. Neff had to say and you're going to get the materials promptly, I guess. I guess that means within a week.

How much time do you need to review it, Mr. Brill?

MR. BRILL: It sounds like millions of pages.

THE COURT: Yes, yes, it does. Why don't you take a preliminary review of the material first.

MR. BRILL: Yes. What I would ask is if the government can perhaps point us to certain parts of the discovery that might be most relevant to our individual clients. That might be helpful in that initial review and then we can come back and have a more fruitful discussion at that point.

THE COURT: That's a good idea, Mr. Neff.

MR. NEFF: I agree, your Honor.

THE COURT: Good.

MR. NEFF: Happy to do so, your Honor.

MR. BRILL: I want to note that's more easily done as to one defendant than as to the other. One defendant is of the 15-or-so entities that this conspiracy used to collect more than $10 million from more than 7500 victims; and one defendant, Mr. Haque, is connected to only a few of the 15 entities in terms of being directly connected. That's different from what was reasonably foreseeable to him, but I want to be upfront that Ms. Leyva is connected to more than half of the 15 entities so, candidly, almost everything in the discovery will be germane to Ms. Leyva, but we will certainly make efforts to point counsel to those parts as best we can.

THE COURT: That's all I could ask is to make efforts to point in this massive information that you're going to produce and indicate what to you is the most relevant.

MR. NEFF: Understood, your Honor.

THE COURT: I would suggest 30 or 45 days for another conference.

MR. BRILL: I think at least 45.

MR. BERTAN: I think that is best.

THE COURT: I will date it 45 days out, and that would be early December.

DEPUTY CLERK: Wednesday, December 4th,at 2:45 p.m.

MR. BRILL: Thank you.

THE COURT: With regard to bail, Mr. Neff?

MR. NEFF: Yes, your Honor. The only two changes or supplements to the bail conditions previously agreed upon in Nevada are slightly broadening condition seven, which in the pretrial report on page one, it had been "avoid all contact with codefendants unless in presence of counsel."

The parties have agreed that that can be changed to "avoid all contact with coconspirators unless in the presence of counsel," so it's a one-word change.

THE COURT: So in paragraph seven where it says restricting defendant's including conspirators?

MR. NEFF: That's correct, your Honor. Then the amount of the bond is $150,000, which is the same dollar amount as for Mr. Haque.

THE COURT: What is the dollar amount for Ms. Leyva?

MR. NEFF: Your Honor, based on my communications with an AUSA in Nevada, it's my understanding that, typically -- and perhaps more than typically -- they do not do a financial bond.

They're conditions of release but without the financial component.

THE COURT: What bond do you want?

MR. NEFF: $150,000, your Honor.

THE COURT: OK. Any objection, Mr. Bertan?

MR. BERTAN: No, your Honor. I've discussed those terms with my client and we're in agreement.

THE COURT: Does everybody have the memo of Dayshawn

C. Bostic, October 15th?

MR. NEFF: Yes.

THE COURT: Those conditions are adapted, seven is modified, and the bail amount is $150,000.

MR. NEFF: Thank you, your Honor.

We, the parties, will work to ensure that the defendant signs her bond today and is able to go back to Nevada if she so wishes.

THE COURT: All right. I've signed the proposed protective order.

Is there anything else to do today?

MR. NEFF: The government seeks to exclude time between today and December 4th for the production and review of discovery and, if appropriate, so that the parties can engage in plea negotiations.

THE COURT: Any objection?

MR. BRILL: No, no.

MR. BERTAN: No, Judge.

THE COURT: The time between now and December 4th will be excluded. It's in the interest of justice to do so. Those interests outweigh the interest of the public and the defendant in speedy trial.

If you need intervention between now and December 4th, let us know and we'll set something up.

MR. NEFF: Thank you.

MR. BERTAN: Thank you.

THE COURT: Mr. Brill, are you appointed?

MR. BRILL: I'm retained on this matter.

(Adjourned)